UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

TAMEKA MCDONALD, A MINOR, BY
AND THROUGH HER PARENT AND
NEXT FRIEND, DEMETRIS MCDONALD,

        Plaintiff,

v.                                                           Civil Action No. 3:07cv425

WAL-MART STORES EAST, LP,

        Defendant.

**MEMORANDUM OPINION ON MOTION IN LIMINE**

Before the Court is Defendant's Motion in Limine. (Docket No. 33.) The Plaintiff filed a response and the Court also held a hearing on the matter. Accordingly, this matter is ripe for adjudication.

**I. Factual and Procedural History**

On September 15, 2003, Plaintiff visited a Wal-Mart store in Richmond, Virginia with her mother and two sisters. (Compl. ¶ 2; Pl.'s Dep. at 19.) While in the store, Plaintiff slipped and injured her left knee. (Pl.'s Answers to Wal-Mart's First Set of Interrogs. ¶ 22.) The Plaintiff, Tameka McDonald, by and through her parent and next friend, Demetris McDonald, filed a Complaint in the Circuit Court for the City of Richmond, alleging that she sustained injuries on the premises of Defendant Wal-Mart Stores East, LP ("Wal-Mart"), due to its negligence, on June 27, 2007. Wal-Mart removed the case to the United States District Court for

1

the Eastern District of Virginia on July 18, 2007, and the parties consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636.

On September 11, 2007, Plaintiff submitted its first set of interrogatories to Wal-Mart. Wal-Mart responded to these interrogatories on October 23, 2007, noting its objection to Plaintiff's request for Wal-Mart's "store policy regarding unwrapping products, shelving products, and dealing with associated debris while unpacking, shelving, and removal from the store" and the accompanying protocol under the circumstances. (Wal-Mart's Answers to Pl.'s 1st Set of Interrogs. ¶ 7.) On October 29, 2007, Plaintiff requested that Defendant produce:

> A copy of any and all store policies relating to unwrapping and stocking products for customer purchase, stocking shelves, discarding debris associated with the same, collecting and disposal of trash and/or product wrap . . . . [and a] copy of any and all store policies relating to the investigation, reporting, recording, and memorialization of accidents on Wal-mart [sic] premises.

(Pl.'s 2d Request for Produc. ¶¶ 2-3.) Wal-Mart responded on November 28, 2007, directing Plaintiff to its "previously produced policies and procedures in effect on the date of the accident," "[w]ithout waiving [its] previously stated objections." (Wal-Mart's Resps. to Pl.'s 2d Requests for Produc. of Docs. ¶¶ 2-3.)

Pursuant to the Court's Scheduling and Pretrial Order, the Court ordered parties to identify expert witnesses by November 9, 2007. On November 9, 2007, Plaintiff designated Dr. William Zeulzer as an expert witness. Dr. Zeulzer treated Plaintiff for problems with her left knee and operated on Plaintiff's left knee on April 27, 2004, and on April 21, 2005. Plaintiff has represented that she furnished Wal-Mart with Dr. Zeulzer's curriculum vitae. (Pl.'s Designation of Experts at 1.) In her designation of Dr. Zeulzer, Plaintiff stated:

>Dr. Zeulzer has not been specifically retained as an expert as contemplated by the Rules of Civil Procedure but will testify as a medical provider to the plaintiff. He will offer his expert opinions, which have been developed through his course of treatment of the plaintiff, as to the cause and nature of plaintiff's injuries. He will testify as to the costs associated with the plaintiff's treatment in the past, as well as the probability and cost of future treatment. He will further testify as to any disability rating the plaintiff may have suffered as a result of her injuries.
>
>Dr. Zeulzer holds all of his opinions within a reasonable degree of medical certainty.

(Pl.'s Designation of Experts at 1.) On December 3, 2007, the parties deposed Dr. Zeulzer. On December 5, 2007, Plaintiff supplemented her designation of expert witness to "incorporate[] [Dr. Zeulzer's] December 3, 2007 deposition testimony and all medical records to his anticipated expert opinions to be offered in his de bene esse deposition and at trial." (Supplemental Designation of Expert Witness at 1.)

Upon consent of the parties and on the Court's order, Dr. Vic Goradia examined Plaintiff on December 6, 2007. Dr. Goradia concluded that Plaintiff "sustained a contusion of her left knee with mild exacerbation of pre-existing chondromalacia of her kneecap." (Goradia Written Report at 6.) He concluded that Plaintiff has hypermobile patella in both knees, hyperextension in both knees, and that she "reached maximum medical improvement by September 2004." Goradia Written Report at 5-6. The parties conducted Dr. Zeulzer's *de bene esse* deposition on December 17, 2007.

### III. Discussion

A.    **Testimony of Dr. William Zuelzer**

In its Motion in Limine, Wal-Mart moves the Court to exclude Dr. Zeulzer "from testifying as to future surgery and/or disability rating."[1] (Mot. in Limine at 1.) Plaintiff states: "[Dr. Zeulzer] will offer his expert opinions . . . . [and] will testify as to the costs associated with plaintiff's treatment in the past, . . . the probability and cost of future treatment, . . . . [and] as to any disability rating the plaintiff may have suffered as a result of her injuries." Pl.'s Designation of Experts at 1. Wal-Mart argues that the Court's Scheduling and Pretrial Order "presupposes that the treating physician's opinions are provided to the defendant in the medical records." (Mem. of Points & Authorities in Supp. of Wal-Mart's Mot. in Limine ("Mem. in Supp. of Mot. in Limine") at 5.) Wal-Mart contends that because Dr. Zeulzer does not indicate that Plaintiff had a disability rating, the Court should not permit Plaintiff to "circumvent the disclosure requirements for an expert witness by simply relying on the defendant to depose her witness to learn the witness' opinions." (Mem. in Supp. of Mot. in Limine at 5-6.)

In response, Plaintiff argues that she properly identified all treating physicians, including Dr. Zeulzer, to Wal-Mart. (Pl.'s Mem. of Points & Authorities in Opp'n To Wal-Mart's Mot. in Limine ("Pl.'s Opp'n to Mot. in Limine") at 2.) She also argues that she "informed [D]efendant that Dr. Zeulzer would testify about his treatment of the plaintiff and the probability of future treatment" when she designated him as an expert witness. (Pl.'s Opp'n to Mot. in Limine at 2; *see* Pl.'s Designation of Experts.) Finally, Plaintiff argues that Federal Rule of Civil Procedure

---

[1] At oral argument, the parties agreed that Dr. Zeulzer would not offer testimony as to future medical treatment. Therefore, the aspect of the motion pertaining to future medical treatment is moot.

26(a)(2)(B)[2] does not require a detailed report from a witness not specifically retained as an expert. (Pl.'s Opp'n to Mot. in Limine at 2.)

Rule 26(a)(2) requires parties to disclose the identity of all witnesses they have "retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). The Scheduling and Pretrial Order in this case further clarifies that "Rule 26(a)(2)(B) shall not be deemed to include the opinion(s) of treating professionals and the terms of this Order shall supercede any conflicting provisions of Rule 26." (Scheduling and Pretrial Order ¶ 3a) (emphasis in original). This is consistent with the Virginia law that allows treating physicians to offer opinions "without the necessity of a report under Fed. R. Civ. P. 26(a)(2)(B)." *Hall v. Sykes*, 164 F.R.D. 46, 48 (E.D. Va. 1995).

In *Hall v. Sykes*, the court addressed in depth the circumstances under which a treating physician need be designated as a specially retained expert requiring disclosure under Fed. R. Civ. P. 26. Ruling that treating physicians generally are exempt from submitting a report, the court observed that the Advisory Committee to the 1993 amendments to Rule 26 "specifically suggested that a treating physician is generally not required to present an expert written report," and noted that, "[t]raditionally, treating physicians have been permitted to express their opinions

---

[2] Rule 26(a)(2)(B) states in relevant part: "Unless otherwise stipulated or ordered by the court, this disclosure [of expert testimony] must be accompanied by a written report . . . if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B).

5

of causation and prognosis derived from the ordinary treatment of the patient." *Id.* Discovery permits the opposing party sufficient opportunity to learn what those opinions might be.

That does not end the inquiry, however.[3] Implicit in this standard is that a treating physician cannot testify beyond what he or she derived from the ordinary treatment of the patient.[4]

In the present case, the parties do not dispute that Dr. Zeulzer is a treating physician, or that Plaintiff timely disclosed Dr. Zeulzer as an expert witness. However, Wal-Mart contends that Plaintiff did not provide it with Dr. Zeulzer's opinion and that it should not be required to discover Dr. Zeulzer's opinion by deposing him.

---

[3] In *Hall*, the Court also ruled that, if a treating physician "is specially retained or employed to render a medical opinion based on factors that were not learned in the course of the treatment of the patient, then such a doctor would be required to present an expert written report." 164 F.R.D. at 48-49. Routine payment of fees to attend a deposition or to testify in court does not constitute such special employment. *Id.* at 48. Plaintiff represented in oral argument that no such retention agreement existed.

[4] Under Virginia law, the courts require documentation in the medical record for testimony proffered, and require that any opinions be expressed to a reasonable degree of medical probability. *Pettus v. Gottfried*, 606 S.E.2d 819, 824 (Va. 2005) (*citing* Va. Code § 8.01-399(B)). Section 8.01-399(B) of the Virginia Code states in relevant part:

> If the physical or mental condition of the patient is at issue in a civil action, the diagnoses, signs and symptoms, observations, evaluations, histories, or treatment plan of the practitioner, obtained or formulated as contemporaneously documented during the course of the practitioner's treatment, together with the facts communicated to, or otherwise learned by, such practitioner in connection with such attendance, examination or treatment shall be disclosed but only in discovery pursuant to the Rules of Court or through testimony at the trial of the action . . . . Only diagnosis offered to a reasonable degree of medical probability shall be admissible at trial.

Va. Code 8.01-399(B).

In deciding whether to exclude Dr. Zeulzer's testimony, the Court must decide whether Dr. Zeulzer's opinions exceed the scope of testimony derived during the ordinary course of treatment such that Plaintiff should have disclosed Dr. Zeulzer's opinions under Rule 26. Dr. Zeulzer offers the opinions that Plaintiff "will have . . . pain going up and down stairs, squatting, deep-knee bends," and that "[b]ased on the AMA Guidelines . . . [Plaintiff will] have a 5-percent lower-extremity impairment of the left lower extremity which is permanent." (Zeulzer Dep. at 51, 54.) The Court finds that these opinions exceed the scope of a medical opinion derived from the ordinary course of treatment. Therefore, the Court turns to whether Plaintiff's failure to disclose Dr. Zeulzer's opinions prejudiced Wal-Mart. Wal-Mart argues that it will be "unfairly prejudiced by the plaintiff's failure to timely and properly designate her expert witnesses." (Mem. in Supp. of Mot. in Limine at 6.) It states that it had inadequate time to prepare a defense, and that the improper disclosure necessitated the bringing of this motion.

Federal Rule of Civil Procedure 37(c)(1) states: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Courts apply a five-factor test to determine whether a nondisclosure is substantially justified or harmless. *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003). These factors are:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Id.* at 597. The first four factors relate mainly to the harmlessness exception. *Id.*

Applying the five-part test to the present case, the Court finds that Plaintiff's failure to disclose Dr. Zeulzer's opinion about Plaintiff's disability rating could be harmless. As to the first factor, Plaintiff's Designation of Experts states that "[Dr. Zuelzer] will offer his expert opinions . . . . as to the cause and nature of plaintiff's injuries, . . . . [and] as to any disability rating the plaintiff may have suffered as a result of her injuries." (Pl.'s Designation of Experts.) Therefore, Plaintiff sufficiently alerted Wal-Mart that Dr. Zeulzer would testify about a disability rating. While Wal-Mart argues it should have known the exact testimony as to a disability rating, Plaintiff at least notified Wal-Mart that such testimony existed.

As to the second factor, whether Wal-Mart could cure the surprise, to the extent that the designation did not alert Wal-Mart sufficiently, Wal-Mart had the opportunity to cure the surprise by deposing Dr. Zeulzer on December 3, 2007, and, importantly, on December 17, 2007, when it took Dr. Zeulzer's *de bene esse* deposition. Though the discovery deposition occurred after the deadline for disclosing experts, it preceded the close of discovery on December 8, 2007, and preceded Dr. Goradia's examination of Plaintiff. In his discovery deposition, Dr. Zuelzer stated: "[Plaintiff] would have a 5-percent lower-extremity impairment of the left lower extremity which is permanent of the left lower extremity." (Zeulzer Dep. at 54.) The December 17, 2007 *de bene esse* deposition occurred after Wal-Mart had the benefit of its own independent medical examination on December 6, 2007. This testimony and its accompanying opportunity to cross-examine and explore Dr. Zeulzer's opinions cure any surprise to Wal-Mart, satisfying the second prong of the five-part test.

The remaining factors also weigh in favor of Plaintiff. Allowing Dr. Zeulzer's testimony as to disability rating will not disrupt the trial because trial has not begun, and the disclosure

8

occurred well before any trial date. Dr. Zeulzer's testimony holds importance because it will help the jury determine whether Plaintiff has proven her allegations of injury sufficiently. Finally, as to the fifth factor weighing Plaintiff's explanation for her failure to disclose the evidence, at issue here is the extent of disclosure, rather than a failure to disclose altogether. Given that deposition testimony twice supplemented the opinion and subjected it to cross examination, the Court finds this factor weighs in Plaintiff's favor as well.[5] *See* Mot. in Limine, Exs. D, F.

Accordingly, the Court shall DENY Wal-Mart's Motion in Limine and allow Dr. Zeulzer to testify about disability rating.

**B.     Wal-Mart's Policies and Procedures**

Wal-Mart moves the Court to exclude its policies and procedures "because they are irrelevant to the issues involved in this case." (Mem. in Supp. of Mot. in Limine at 6.) Wal-Mart also objects to Plaintiff's request for "the store policy regarding unwrapping products, shelving products, and dealing with associated debris," (Wal-Mart's Answers to Pl.'s 1st Set of Interrogs. ¶ 7), Plaintiff's request for "any and all store policies relating to unwrapping and stocking products for customer purchase, stocking shelves, discarding debris associated with the same, collecting and disposal of trash and/or product wrap," (Wal-Mart's Resps. to Pl.'s 2d Req. for Produc. of Docs. ¶ 2), and Plaintiff's request for "any and all store policies relating to the

---

[5] To the extent Wal-Mart claims Dr. Zeulzer fails to adequately state the basis for his opinions because of a lack of records or description of method, the Court does not have a full record on which to rule. Should Wal-Mart seek to raise that objection, it should establish its position during the Final Pretrial Conference during discovery designations as to Dr. Zeulzer's *de bene esse* deposition. Moreover, this opinion does not address Plaintiff's duties under Fed. R. Civ. P. 26(e)(1).

9

investigation, reporting, recording, and memorialization of accidents on Wal-Mart premises" (Wal-Mart's Resps. to Pl.'s 2d Req. for Produc. of Docs. ¶ 3). Wal-Mart contends that these policies "are maintained internally, are not available to customers, and are used exclusively to provide guidance to Wal-Mart employees in the performance of their duties." (Mem. in Supp. of Mot. in Limine at 3.)

"[W]hether a given course of conduct is negligent, or the exercise of reasonable care, must be determined by the standard fixed by law, without regard to any private rules of the party." *Hottle v. Beech Aircraft Corp.*, 47 F.3d 106, 110 (4th Cir. 1995) (*quoting Virginia Ry. & Power Co. v. Godsey*, 83 S.E. 1072, 1073 (Va. 1915)). Courts distinguish "private rules," that are inadmissible to establish standard of care, from other policies and procedures that are admissible based on whether "the rules were intended for the guidance of the company's employees" and whether "the plaintiff was aware of [the rules]." *Pullen v. Nickens*, 310 S.E.2d 452, 456 (Va. 1983); *see also Riverside Hosp., Inc. v. Johnson*, 636 S.E.2d 416, 421-22 (Va. 2006) (affirming the trial court's admission of orientation instructions and training materials because they were not "private rules" that employees were expected to follow and because they were not offered to establish the standard of care). "Private rules" may be admissible to the extent offered for a purpose not "subsumed within the issue of the requisite standard of care." *Klein v. Boyle*, No. 92-1838, 1993 WL 426360, at *1 (4th Cir. Oct. 22, 1993) (affirming the exclusion of defendant hospital's internal policies to establish duty owed to a patient because this was too related to the standard of care).

In this case, Wal-Mart's policies and procedures are "private rules." The contents reveal that Wal-Mart promulgated the rules to provide guidance for its employees. (Pl.'s Mem. in Opp'n to Mot. in Limine at 3, Ex. 2.) The policies and procedures are unavailable to the public, and Plaintiff admits that she was not aware of Wal-Mart's policies and procedures at the time of the accident. (Mem. in Supp. of Mot. in Limine at 3; Pl.'s Dep. at 84.) Accordingly, the Court finds Wal-Mart's policies and procedures inadmissible to prove negligence or to establish the applicable standard of care.

Indeed, Plaintiff concedes the inadmissibility of Wal-Mart's internal policies to set the standard of care. (Pl.'s Mem. in Opp'n to Mot. in Limine at 3.) However, Plaintiff appears to propound two uses for Wal-Mart's policies and procedures. First, she appears to offer the policies and procedures to establish "defendant's corporate philosophy." (Pl.'s Mem. in Opp'n to Mot. in Limine at 3.) Second, she appears to offer the policies and procedures to bolster her argument that the Court should grant her relief based on spoliation of evidence. (Pl.'s Mem. in Opp'n to Mot. in Limine at 4.)

The policies cannot be used for the first proposed purpose. It is not clear how a court can attribute a "mindset" to a corporation. Even if it could, no evidence in the record suggests these employees acted based on such a mindset. Thus, any policy is irrelevant. Plaintiff takes umbrage with Wal-Mart including mention of monetary concerns alongside others in its accident policy.[6] However, even presuming its reference admissible to show motive of any employee here,

---

[6] The excerpt from Wal-Mart's policies and procedures presently in the record guides Wal-Mart's employees to "fix recognized hazards and use safe work practices . . . [to] eliminate accidents, ensure [the employees'] well-being, help [Wal-Mart] customers enjoy a pleasant, safe shopping experience, and control a major source of expense to [Wal-Mart]." (Pl.'s Mem. in Opp'n of Mot. in Limine, Ex. 2.)

admitting the policy would unfairly prejudice Wal-Mart, and such prejudice substantially outweighs any probative value. The Court finds Wal-Mart's policies and procedures inadmissible to show corporate philosophy or motive of any employee here.

As to Plaintiff's second proposed use of the policies and procedures to bolster its spoliation of evidence argument, the Court has already ruled on this matter.[7] To the extent Plaintiff seeks admission for trial, the Court sees no need for Plaintiff to use Wal-Mart's policies and procedures at trial.

Accordingly, the Court shall GRANT Wal-Mart's Motion in Limine as to the inadmissibility of Wal-Mart's policies and procedures. The Court shall exclude Wal-Mart's policies and procedures for all purposes related to standard of care, for the purposes of establishing Wal-Mart's corporate mindset, and for bolstering Plaintiff's spoliation of evidence argument.

### IV. Conclusion

For the foregoing reasons, the Court shall GRANT IN PART and DENY IN PART Defendant's Motion in Limine (Docket No. 33.) The Court will allow Dr. Zeulzer to testify as to disability rating, presuming Plaintiff can establish an adequate basis for the opinion. The Court prohibits Plaintiff from introducing Wal-Mart's policies and procedures to establish standard of care, to establish Wal-Mart's corporate mindset, or to bolster its spoliation of evidence argument.

---

[7] The Court found insufficient evidence that Richmond acted in bad faith to warrant summary judgment as requested by Plaintiff, but allowed an adverse inference instruction based on the spoliation of evidence. Jan. 14, 2008 Mem. Op. on Mots. Summ. J.

An appropriate order shall issue.

/s/
M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Entered: January 14, 2008