**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
Richmond Division

TAMEKA MCDONALD, A MINOR, BY
AND THROUGH HER PARENT AND
NEXT FRIEND, DEMETRIS MCDONALD,

    Plaintiff,

v.                                                               Civil Action No. 3:07cv425

WAL-MART STORES EAST, LP,

    Defendant.

## MEMORANDUM OPINION ON MOTIONS FOR SUMMARY JUDGMENT

    The Plaintiff, Tameka McDonald, by and through her parent and next friend, Demetris McDonald, filed a Complaint in the Circuit Court for the City of Richmond, alleging that she sustained injuries on the premises of Defendant Wal-Mart Stores East, LP ("Wal-Mart"), due to its negligence. Wal-Mart, a Delaware limited partnership with its principal place of business in Bentonville, Arkansas, removed the suit to this Court pursuant to 28 U.S.C. § 1441, and the parties consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636. Wal-Mart filed a Motion for Summary Judgment, arguing that Plaintiff fails to establish that Wal-Mart had notice of the hazardous condition that caused Plaintiff's fall. (Docket No. 27.) Plaintiff responded and Wal-Mart filed a reply. Plaintiff also filed a Motion for Summary Judgment, arguing that the Court should grant her Summary Judgment, strike Wal-Mart's defenses, or permit a spoliation of evidence inference because Wal-Mart intentionally destroyed evidence.

(Docket No. 29.) Wal-Mart responded to this motion[1] and Plaintiff filed a reply. Accordingly, both motions are ripe for adjudication.

## I. Standard of Review

Summary judgment under Rule 56 is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986), *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Once a party has properly filed evidence supporting the motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but must instead set forth specific facts illustrating genuine issues for trial. *Celotex*, 477 U.S. at 322-24. These facts must be presented in the form of exhibits and sworn affidavits. Fed. R. Civ. P. 56(c).

A court views the evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. Whether an inference is reasonable must be considered in conjunction with competing inferences to the contrary. *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 818 (4th Cir. 1995). Nonetheless, the nonmoving "party is entitled to have 'the credibility of his evidence as forecast assumed.'" *Miller v.*

---

[1] Plaintiff did not timely file her motion, and, although it fully briefed the matter, Wal-Mart moved to strike the motion as untimely. Plaintiff timely raised similar spoliation arguments in response to Wal-Mart's motion in limine. During oral argument, Plaintiff sought to have the summary judgment motion filed *nunc pro tunc*. The Court GRANTS Plaintiff's motion to file her motion *nunc pro tunc* (and denies Wal-Mart's Motion to Strike) because Plaintiff's summary judgment motion more squarely presents the spoliation issue to the Court. Wal-Mart suffers no prejudice from such a finding because Plaintiff timely raised spoliation in another motion, and Wal-Mart adequately briefed the issue in both instances. Creating a clear record benefits both parties.

*Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (*quoting Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)). Ultimately, the court must adhere to the affirmative obligation to bar factually unsupportable claims from proceeding to trial. *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (*citing Celotex*, 477 U.S. at 323-24).

## II.  Facts

On September 15, 2003, Plaintiff visited a Wal-Mart store in Richmond, Virginia, with her mother and two sisters. (Compl. ¶ 2; Pl.'s Dep. at 19.) While in the store, Plaintiff shopped in the meat department. (Pl.'s Dep. at 20.) Plaintiff passed a Wal-Mart employee, Gwendolyn Richmond, who was unwrapping plastic from pallets to restock meat. (Pl.'s Dep. at 79; Richmond Dep. at 16.) Approximately twelve (12) minutes later, Plaintiff fell. (Pl.'s Dep. at 80.) Plaintiff injured her left knee in the fall. (Pl.'s Answers to Wal-Mart's First Set of Interrogs. ¶ 22.) After the fall, Plaintiff saw a thick piece of plastic wrap approximately three (3) feet long and six (6) inches wide at her feet. (Pl.'s Dep. at 46-47.)

Plaintiff states that the piece of plastic was the same type of plastic that Richmond was unwrapping. (Pl.'s Dep. at 47.) Plaintiff's mother indicates that although the piece of plastic wrap looked similar to that which Richmond was unwrapping, "I'm not for sure if it's the exact same plastic." (Demetris McDonald Dep. at 56.) Plaintiff did not see the piece of plastic wrap before she fell. (Pl.'s Dep. at 48.) Richmond cannot say with certainty that the piece of plastic was the same type of plastic that she was unwrapping because she was working with "big plastic" and the piece of plastic was "a little piece of plastic." (Richmond Dep. at 19.) Richmond also states, "Usually, I don't have [] small wrapping on my . . . pallets . . . I don't cut them to where they'd be broke all up . . . . It's just one size, unwrap, ball it up into a ball, and put it somewhere

for safety or in the trash." (Richmond Dep. at 22-23.) Though Richmond cannot say whether the plastic wrap did or did not fall from the cart where she was unwrapping the meat (Richmond Dep. at 22), Plaintiff's mother states that "[Richmond] was throwing plastic on the floor where she was at, but I didn't see her put the plastic where Tameka was at." (Demetris McDonald Dep. at 55-56.) Plaintiff fell approximately ten (10) to twelve (12) feet from where Richmond was restocking merchandise. (Pl.'s Dep. at 30; Richmond Dep. at 23.) Plaintiff alleges that she shouted in pain, and when her mother and the Wal-Mart employee tried to help her, she "fell again because [her] knee would not support [her]." (Pl.'s Answer to Wal-Mart's Interrogs. ¶ 22.) After the fall, Richmond says she asked Plaintiff if she were okay. (Richmond Dep. at 26.) Richmond states that Plaintiff responded that she was fine. (Richmond Dep. at 26.)

Immediately following the accident, Richmond called her manager Jonathan Anderson to the scene. (Richmond Dep. at 26-27.) Anderson took an incident report, and Plaintiff's mother filled out a customer statement. Richmond informed Anderson that Plaintiff had tripped on a piece of plastic wrap. (Richmond Dep. at 27.) Richmond discarded the plastic wrap after confirming with Anderson that "everything was okay." (Richmond Dep. at 28.) Richmond states that she saw Plaintiff and her mother walk away and continue shopping.[2] (Richmond Dep. at 30.)

---

[2] In briefing, Plaintiff states, "At the time of the accident, the eleven year old plaintiff's injuries appeared significant. Her twin sister nearly carried her out of the store to the car, where she thereafter sought medical attention." Mem. in Supp. of Pl.'s Mot. for Summ. J. at 3. Plaintiff's counsel confirmed in oral argument that such testimony existed, but that it did not appear in the written record before the Court. Wal-Mart did not contest the representation that discovery responses contained some testimony as to the manner in which Plaintiff left the store.

### III. Discussion

A court exercising diversity jurisdiction applies the substantive law of the forum state. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78-79 (1938), *Cole v. Food Lion, L.L.C.*, 370 F. Supp. 2d 434, 436 (E.D. Va. 2005). In Virginia, a claim of negligence requires "'proof that the defendant breached some duty which it owed the plaintiff, and caused, by such breach, [the] injury.'" *Cole*, 370 F. Supp. 2d at 439 (*quoting Colonial Stores Inc. v. Pulley*, 125 S.E.2d 188, 189 (Va. 1962)). The standard for liability in slip and fall cases is well established:

> The [store owner] owed the [customer] the duty to exercise ordinary care toward her as its invitee upon its premises. In carrying out this duty it was required to have the premises in a reasonably safe condition for her visit; to remove, within a reasonable time, foreign objects from its floors which it may have placed there or which it knew, or should have known, that other persons had placed there; to warn the [customer] of the unsafe condition if it was unknown to her, but was, or should have been, known to the [store owner].

*Winn-Dixie Stores, Inc. v. Parker*, 396 S.E.2d 649, 650 (Va. 1990) (*quoting Pulley*, 125 S.E.2d at 190).

### A. Prima Facie Case

To establish a prima facie case of premises liability, the plaintiff must show an unsafe condition, and must prove "'*why* and *how* the incident happened'; 'if the cause of the event is left to conjecture, guess, or random judgment, the plaintiff cannot recover.'" *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 451 (4th Cir. 2004) (emphasis in original) (*quoting Town of West Point v. Evans*, 299 S.E.2d 349, 351 (Va. 1983)). Where a plaintiff lacks evidence as to why an injury occurred, he or she may present evidence of the defendant's actual or constructive notice. *Hodge,* 360 F.3d at 452. Under the theory of constructive notice, the condition must pose a foreseeable risk of danger in order for knowledge of that danger to be imputed to the owner of

5

the premises. *Id.* A plaintiff may prove constructive notice by introducing "evidence that the defect was noticeable and had existed for a sufficient length of time to charge its possessor with notice of its defective condition." *Grim v. Rahe, Inc.*, 434 S.E.2d 888, 890 (Va. 1993). A *prima facie* case requires evidence of when an unsafe condition developed. *Id.*

However, where plaintiff bases a claim for negligence on the defendant's "affirmative conduct" or the "'genesis' of [a] dangerous condition in the first place," liability attaches if "'an ordinarily prudent person, given the facts and circumstances [the defendant] knew or should have known, could have foreseen the risk of danger resulting from such circumstances.'" *Goehler v. Wal-Mart Stores, Inc.*, No. 99-2057, 2000 WL 1161700, at *2 (4th Cir. Aug. 17, 2000) (*citing Memco Stores, Inc. v. Yeatman*, 348 S.E.2d 228, 230 (Va. 1986)). "[T]he foreseeability of the danger . . . [is] the relevant question for [a] jury to consider in determining whether [a] defendant [has] been negligent." *O'Brien v. Everfast, Inc.*, 491 S.E.2d 712, 715 (Va. 1997) (finding knowledge of the potential danger created by bolts of fabric leaning on a cutting table sufficient to support a jury's finding of negligence).

In the present case, Wal-Mart moves the Court to grant summary judgment because it alleges that Plaintiff cannot establish that Wal-Mart had notice of the dangerous condition, thus failing to establish a prima facie case for liability. However, a material dispute exists as to whether Wal-Mart was the genesis of the dangerous condition that caused Plaintiff's fall. Defendant contends that Plaintiff has not established that anyone from Wal-Mart actually knew when and how the plastic wrap came to be on the floor before the accident. Plaintiff counters that Defendant cannot establish that the plastic wrap did not come from Richmond's unwrapping merchandise to restock the shelves, and that the most logical source for the plastic wrap would be

from the individual who concedes she was nearby unwrapping plastic from products. A jury should decide this issue because the parties sufficiently dispute whether the circumstantial evidence supports a finding that Wal-Mart generated the plastic wrap on which Plaintiff slipped. Therefore, the Court cannot grant summary judgment.

Moreover, "[t]he absence of evidence as to what caused [the dangerous condition] would not preclude the jury from finding that [the plaintiff's] injury resulted from [the store's] negligence." *Id.* at 714. Regardless of whether the jury finds that Wal-Mart created the dangerous condition, the jury still must decide if Wal-Mart knew about the condition and negligently permitted it to exist. *Compare Goehler*, 2000 WL 1161700, at *2 (finding that the trial court properly submitted the issue of negligence to the jury when the plaintiff alleged that the store affirmatively created the dangerous condition by placing soap dispensers over the floor rather than over the sink), *with Austin v. Shoney's, Inc.*, 486 S.E.2d 285, 288 (Va. 1997) (imputing constructive notice to the store where the jury found that the store created the dangerous condition by failing to keep the floor in a safe and dry condition); *but see id.* at 288-89 (Compton, J., dissenting) (critiquing the majority's finding of constructive notice absent any evidence that the store knew how long the floor's slippery condition existed). Therefore, Wal-Mart's Motion for Summary Judgment shall be DENIED.

**B.     Spoliation of Evidence**

Plaintiff seeks summary judgment as to liability, the striking of Wal-Mart's defenses, or an adverse inference instruction based on Wal-Mart's alleged spoliation of evidence. "The spoliation of evidence rule allows the drawing of an adverse inference against a party whose intentional conduct causes not just the destruction of evidence . . . but also against one who fails

7

to preserve or produce evidence." *Hodge*, 360 F.3d at 450 (*citing Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 155-56 (4th Cir. 1995); *NLRB v. Ford Radio & Mica Corp.*, 258 F.2d 457, 463 (2d Cir. 1958)). This inference "'cannot be drawn merely from [the] negligent loss or destruction of evidence; the inference requires a showing that the party knew the evidence was relevant to some issue at trial and that [her or] his willful conduct resulted in its loss or destruction.'" *Hodge*, 360 F.3d at 450 (*quoting Vodusek*, 71 F.3d at 156). A court must also find that "the evidence would have been relevant to an issue at trial and otherwise would naturally have been introduced into evidence." *Trigon Ins. Co. v. United States*, 204 F.R.D. 277, 286 (E.D. Va. 2001). The moving party bears the burden of showing that "the adverse party had a duty to preserve the allegedly spoiled [evidence] and that the [evidence was] intentionally destroyed." *Id.*

      1.      **<u>Duty to Preserve Evidence</u>**

The parties dispute whether Wal-Mart had a duty to preserve the plastic wrap. Plaintiff presents Wal-Mart's Policies and Procedures as evidence that Wal-Mart had a duty to preserve the plastic wrap. (Mem. in Supp. of Pl.'s Mot. for Summ. J. at 3, Ex. IV.) Plaintiff also argues that Wal-Mart had a duty to preserve evidence because it requires its employees to complete incident reports after an accident, indicating that Wal-Mart is "*always* litigation ready." (Mem. in Supp. of Pl.'s Mot. for Summ. J. at 5.) Defendant counters that it did not have a duty to preserve the plastic wrap because Richmond did not know Plaintiff would file a lawsuit when she discarded the plastic wrap. (Wal-Mart's Mem. in Opp'n to Pl.'s Mot. for Summ. J. at 4.) In particular, Wal-Mart notes that Plaintiff told Richmond that she was okay and walked out of the store without a limp. (Wal-Mart's Mem. in Opp'n to Pl.'s Mot. for Summ. J. at 5; Richmond

Dep. at 28, 30.) Wal-Mart contends that it could not reasonably anticipate Plaintiff's lawsuit until early October 2003, almost three weeks after the accident, when Plaintiff's mother called Wal-Mart's claims handling company. (Wal-Mart's Mem. in Opp'n to Pl.'s Mot. for Summ. J. at 5, Ex. C.)

The Court notes that Anderson completed an incident report immediately following the accident, and that it is not clear Wal-Mart required managers to fill out reports after every accident. *See* Anderson Dep. at 15 ("anytime anybody falls, [Wal-Mart employees] call a manager over to the department to make sure that the customer's okay and fill out an incident report *if need be.*") (emphasis added). Wal-Mart took a customer statement from Plaintiff's mother.[3] Wal-Mart also had possession of the plastic wrap after the accident. Dispute apparently exists as to Wal-Mart's characterization of the manner in which Plaintiff left the store. (Mem. in Supp. of Pl.'s Mot. for Summ. J. at 3.) Based on the record, Wal-Mart's claim that clearly it lacked a duty to preserve the plastic wrap under these circumstances cannot fully be sustained.

**2.     Intentional or Bad Faith Conduct**

Plaintiff has shown that Richmond destroyed the evidence intentionally. *See* Richmond Dep. at 28. However, it does not appear that Richmond destroyed the evidence in bad faith because Richmond says she did not dispose of the plastic wrap until confirming with her

---

[3] Wal-Mart's counsel indicated that this document confirmed that it could not anticipate litigation would ensue because Plaintiff's mother did not mention injury on the customer statement. However, the only question asked on the customer statement form is, "How did the incident occur?" This does not necessarily prompt a response as to injury.

manager that everything was fine. (Richmond Dep. at 28.) Plaintiff did not immediately seek preservation of the plastic wrap at the time of the accident. Still, Richmond destroyed the plastic knowing an incident report had been taken by her manager and the intentional conduct is noted by the Court.

### 3. Appropriate Remedy

The spoliation of evidence rule allows a court broad discretion to impose an appropriate sanction against a party who destroyed relevant evidence. *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001), *Vodusek*, 71 F.3d at 155. Such sanction serves the dual purpose of "leveling the evidentiary playing field and . . . sanctioning the improper conduct." *Vodusek*, 71 F.2d at 156. Intentional conduct, and not bad faith, is sufficient for a court to permit an inference based on the spoliation of evidence. *Hodge*, 360 F.3d at 450. However, "the vast weight of authority, including the Virginia Supreme Court, holds that absent bad-faith conduct applying a rule of law that results in dismissal on the grounds of spoliation of evidence is not authorized." *Cole v. Keller Indus., Inc.*, 132 F.3d 1044, 1047 (4th Cir. 1998). While there is no "single test or set of considerations" to determine the appropriate remedy for spoliation, courts consider:

> (1) the degree of fault of the party who altered or destroyed the evidence;
> (2) the degree of prejudice suffered by the opposing party; and
> (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.

*Trigon Ins. Co.*, 204 F.R.D. at 287-88 (*citing Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994)).

As to factor one, the degree of Wal-Mart's fault in destroying the evidence, the Court has found intentional conduct in Richmond's destroying the pertinent evidence, but not bad faith. The Court also notes, however, Wal-Mart had exclusive control over the plastic wrap and therefore bears total responsibility for the plastic wrap's destruction.

Regarding factor two, the prejudice to Plaintiff, Plaintiff contends that "Wal-Mart's employee intentionally destroyed the plaintiff's best evidence that the wrap causing her fall came from the same wrap as the wrap Miss Richmond was working with and disposing of at the time of the incident." (Pl.'s Mem. in Supp. of Pl.'s Mot. for Summ. J. at 2.) Plaintiff further argues that the destruction of the plastic wrap prejudices her "attempt to demonstrate from [where] the errant plastic shrink wrap arose that caused her . . . injuries." (Pl.'s Mem. in Supp. of Pl.'s Mot. for Summ. J. at 3.) The Court agrees that the destruction of the plastic wrap prejudices Plaintiff because a material dispute of fact exists about the plastic wrap's characteristics, its genesis, and any resulting liability. *Compare* Richmond Dep. at 19-20 (characterizing the piece of plastic as "small" and of a different type than the type used to wrap meat), *with* Pl.'s Dep. at 46-47 (approximating the piece of plastic to be three (3) feet long and six (6) inches wide). The absence of physical evidence to prove an essential element of the case or to rebut Wal-Mart's defenses creates significant prejudice to Plaintiff. Plaintiff must now prove by circumstantial evidence what she cannot prove by direct evidence.

Now, considering factor three, the Court decides the most appropriate sanction under the circumstances. Wal-Mart did not act in bad faith and Plaintiff did not give immediate notice that she wanted the plastic wrap preserved. The Court finds summary judgment inappropriate under the circumstances. *See Keller Indus., Inc.*, 132 F.3d at 1047 (finding summary judgment too

11

severe a sanction where the plaintiff's destruction of the ladder that led to his injuries was unintentional and not in bad faith). The Court so finds with respect to striking Wal-Mart's defenses as well because a lesser sanction exists that would sufficiently cure the prejudice to Plaintiff and deter similar conduct in the future. *See Trigon*, 204 F.R.D. at 290-91 (finding that while the government's spoliation of documents was "most serious indeed," excluding testimony was too severe because an adverse inference sufficiently cured any prejudice to the moving party's diminished ability to cross-examine witnesses).

The Court finds granting an adverse inference against Wal-Mart appropriate under these circumstances. In this case, Wal-Mart's defense rests in part, if not entirely, on whether Richmond was the source of the wrap and whether Wal-Mart could have known the plastic wrap was on the floor. Given its admission that an employee handled plastic wrap near the place and time of the accident, it cannot be allowed to dispose of such evidence without consequences, even absent bad faith.

The Court specifically does not find that every store owner must preserve every object on which a customer slips. However, where the employee handling a like material knowingly disposes of the object herself after an accident has occurred, and when, later, the defendant calls the genesis of the object into dispute, some remedy must occur. The striking of all defenses or the entry of summary judgment exceeds the sanction necessary here, but an adverse inference sufficiently remedies Wal-Mart's actions. Accordingly, the Court shall allow an adverse inference jury instruction. Therefore, Plaintiff's Motion for Summary Judgment is DENIED. Plaintiff's Motion for an adverse inference instruction is GRANTED.

## IV.  Conclusion

For the foregoing reasons, the Court shall DENY Defendant's Motion for Summary Judgment (Docket No. 27) and DENY Plaintiff's Motion for Summary Judgment (Docket No. 29).  Sufficient material disputes of fact exist to submit this case to a jury.  The Court GRANTS Plaintiff's Alternative Motion for an Adverse Inference due to Wal-Mart's spoliation of evidence.

An appropriate order shall issue.

/s/
M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Entered: January 14, 2008